**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 2, 2021

LETTER TO COUNSEL

> RE:    *Figgs v. Saul, Commissioner, Social Security Administration*
>        Civil No. 1:20-cv-00334-JMC

Dear Counsel:

On February 7, 2020, Plaintiff Figgs petitioned this Court to review the Social Security Administration's ("SSA") final decision to terminate Plaintiff's Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for Summary Judgment and Plaintiff's Response. (ECF Nos. 14; 17; 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions. This letter explains my rationale.

By decision dated June 18, 2009, the SSA found Plaintiff disabled as of August 10, 2008. (Tr. 26). On October 4, 2016, the SSA determined that Plaintiff was no longer disabled effective October 1, 2016. (Tr. 26; 120–21). Disability Hearing Officer Joseph Lindeman conducted a hearing on August 18, 2017 and ultimately upheld the SSA's determination on reconsideration. (Tr. 26; 145–54). Plaintiff timely filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 26). A hearing was held on May 15, 2018, before ALJ Stewart Goldstein. (Tr. 70–105). Following the hearing, the ALJ determined that Plaintiff's disability ended on October 1, 2016, and Plaintiff had not become disabled within the meaning of the Social Security Act since that date. (Tr. 37). The Appeals Council declined review (Tr. 1–6), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

Ordinarily, the SSA employs a five-step sequential evaluation process. *See Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) ("To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work."). However, where the SSA granted a claimant benefits and subsequently terminated same, an eight-step continuing disability review evaluation process (for disability insurance benefits claims) and a seven-step continuing disability review evaluation process (for supplemental security income claims) guides the ALJ's analysis.[1] *See* 20

---

[1] Periodically, the SSA reviews a claimant's medical impairments to determine if a claimant's disabling condition persists. If the SSA determines that a claimant is no longer disabled, the SSA ceases to provide benefits. This process

C.F.R. §§ 404.1594; 416.994; *see also Czerska v. Colvin*, Civ. No. TMD-12-2238, 2013 WL 5335406, at *1 n.1 (D. Md. Sep. 20, 2013).  As well-articulated recently by another court in this Circuit:

> At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied.  At step two, the claimant's impairment is compared to those in the Listing of Impairments [].  *See* 20 C.F.R. Part 404, Subpart P, App. 1.  If the impairment is included in the Listing or is equivalent to a listed impairment, disability continues.  If the claimant's impairment does not meet or equal a listed impairment, the Commissioner proceeds to step three.  At step three, the Commissioner determines whether the claimant has experienced any medical improvement; if so, the Commissioner proceeds to step four, and if not, the Commissioner skips to step five.  At step four, the Commissioner determines whether the medical improvement is related to the claimant's ability to work; that is, whether there has been an increase in the claimant's residual functional capacity [].  If not, the Commissioner proceeds to step five; if so, the Commissioner skips to step six.  At step five—by which point the Commissioner has concluded that the claimant has not experienced medical improvement or the medical improvement is not related to the claimant's ability to work—the commissioner considers whether any of the exceptions to the medical exceptions to the medical improvement standard apply.  20 C.F.R. §§ 404.1594(d), (e).  At step six, provided the medical improvement is related to the claimant's ability to work, the Commissioner determines whether the claimant's current impairments in combination are severe; if not, the claimant is no longer disabled.  If so, the Commissioner proceeds to step seven and assesses the claimant's RFC to determine whether he or she can perform past relevant work experience.  If the claimant can perform his or her past relevant work experience, the claimant is not disabled.  If the claimant cannot perform past relevant work, however, the Commissioner reaches step eight and considers whether, given the claimant's RFC, age, education, and past experience, the claimant can perform other substantial gainful work.
>
> "Medical improvement" is defined as any decrease in the medical severity of the claimant's previously disabling impairments.  20 C.F.R. § 404.1594(b)(1).  A determination that there has been a decrease in medical severity must be based on improvements in the symptoms, signs, or laboratory findings associated with such impairments.  *Id.*  The determination of whether a claimant can engage in substantial gainful activity involves consideration of all current impairments, the claimant's residual functional capacity, and vocational factors such as age, education, and work experience.  20 C.F.R. § 404.1594(b)(5).

*Furdon v. Berryhill*, Civ. No. 5:18-cv-BO, 2019 WL 1117908, at *2 (E.D.N.C. Mar. 11, 2019).  "Under each of the continuing disability review evaluation processes, there is no presumption of

---

is a Continuing Disability Review.  The only difference between the review processes for disability insurance claims and supplemental security income claims is that the first step in the former is not applicable in the later.  Otherwise, the sequential evaluation remains the same; thus, the Court only includes the more encompassing review process here.

continuing disability." *Czerska*, 2013 WL 5335406, at *1 n.1 (citing *Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir. 1988).

In the instant case, the ALJ found that Plaintiff had "not engaged in substantial gainful activity" since October 1, 2016, the alleged end date of Plaintiff's disability. (Tr. 28). The ALJ further found that during the relevant time frame—i.e., after October 1, 2016—Plaintiff suffered from the severe impairments of "obesity, scoliosis, degenerative disc disease of the lumbar spine, and depression." (Tr. 28). As of October 1, 2016, the ALJ found that medical improvement occurred and related to Plaintiff's ability to work. (Tr. 30). Despite Plaintiff's impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 [C.F.R.] 404.1567(b) and 416.967(b) except: The claimant is limited to no climbing of ladders, ropes, and scaffolds. The claimant is limited to frequently balance, stoop, kneel, crouch and crawl. The claimant can occasionally climb ramps and stairs. The claimant cannot work around hazards such as unprotected heights and dangerous machinery. The claimant cannot work at a production rate pace, as you would typically find on an assembly line or in piecework. Changes in routine with the addition of new or more complex tasks should not occur more frequently than once a month, on the average. She can have no more than occasional interaction with the public.

(Tr. 31).

The ALJ determined that, beginning on October 1, 2016, Plaintiff was unable to perform any past relevant work. (Tr. 36). However, after considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 37). Therefore, the ALJ concluded that Plaintiff's disability ended on October 1, 2016, and Plaintiff has not become disabled again since that date. *Id.*

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

On appeal, Plaintiff argues that Defendant's denial of Social Security benefits is not supported by substantial evidence.[2] (ECF No. 14-2 at 5). More specifically, Plaintiff contends that: (1) the ALJ erred by failing to properly evaluate whether Plaintiff's impairments met or

---

[2] Plaintiff seemingly overlooks the fact that this case stems from the SSA's denial of previously awarded benefits after a continuing disability review, as Plaintiff's briefing is tailored to the oft-cited five step sequential evaluation process articulated in *Mascio*, 780 F.3d at 634–35. Nevertheless, the Court considers the substance of Plaintiff's arguments as applied at the appropriate step of the eight- and seven- step evaluations employed in these cases.

equaled Listing 1.04A; and (2) the ALJ's RFC determination runs afoul of the Fourth Circuit's decision in *Mascio*, 780 F.3d 632, and is therefore unsupported by substantial evidence. (ECF No. 14-2 at 9, 30).

I agree, and find that the ALJ's opinion is not supported by substantial evidence. Therefore, I will deny both motions and remand the case for further analysis. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

## I.  Listing 1.04A

Plaintiff argues that the ALJ's analysis of Listing 1.04 was "perfunctory," and "failed to apply the requirements of [Listing 1.04] to the medical record," while "erroneously asserting an absence of evidence of nerve root compression." (ECF No. 14-2 at 23). In short, Plaintiff asserts that the ALJ's "one sentence rejection of Listing 1.04A is devoid of substantial evidence," "precludes the Court from undertaking meaningful review," and "constitutes material error warranting remand." *Id.* at 13; 22.

Defendant hardly contests Plaintiff's argument that the ALJ should have found nerve root compression; instead, Defendants assumes same as true and contends that it is harmless error. (ECF No. 17-1 at 6). In so arguing, Defendant avers that Plaintiff "failed to satisfy her burden to show that her spine disorder met" or medically equaled all of the specified medical criteria in Listing 1.04. *Id.* at 7. More specifically, Defendant references 2016 and 2017 physical examinations to demonstrate that "there is no credible evidence that [P]laintiff had motor loss accompanied by sensory or reflex loss on examination during the relevant period." *Id.* at 6–7.

The Listings of Impairments "describe[] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity. . . ." 20 C.F.R. § 404.1525(a). At step three of the five-step sequential evaluation, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). To meet Listing 1.04, a claimant must have a disorder of the spine, resulting in compromise of a nerve root, with either: (A) evidence of nerve root compression;[3] (B) spinal arachnoiditis; or (C) lumbar spinal stenosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Each subsection also delineates symptoms for establishing the severity requirement. *Id.*

In *Radford v. Colvin*, the Fourth Circuit rejected the contention of the SSA that Listing 1.04A necessitated that the requisite symptoms be present simultaneously or in close proximity:

> Listing 1.04A requires a claimant to show only . . . that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months. 20 C.F.R. § 404.1509. A

---

[3] In full, Subsection 1.04A requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A.

claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity.

734 F.3d 288, 294 (4th Cir. 2013). In response to *Radford*, the SSA issued Acquiescence Ruling ("AR") 15-1(4),[4] which sets forth a two-step test for the application of Listing 1.04A and is applicable to states within this Circuit. *See Beck v. Saul*, 2019 WL 3423649, at *5 (E.D.N.C. July 3, 2019), *report and recommendation adopted*, 2019 WL 3423424 (E.D.N.C. July 26, 2019). This application is as follows:

> Adjudicators will decide whether the evidence shows that all of the medical criteria in paragraph A are present within a continuous 12-month period (or, if there is less than 12 months of evidence in the record, that all the medical criteria are present and are expected to continue to be present). If all of the medical criteria are not present within a continuous 12-month period, adjudicators will determine that the disorder of the spine did not meet the listing.

> If all of the medical criteria in paragraph A are present within a continuous 12-month period (or are expected to be present), adjudicators will then determine whether the evidence shows—as a whole—that the claimant's disorder of the spine caused, or is expected to cause, nerve root compression continuously for at least 12 months. In considering the severity of the nerve root compression, the medical criteria in paragraph A need not all be present simultaneously, nor in particularly close proximity. The nerve root compression must be severe enough, however, that the adjudicator can fairly conclude that it is still characterized by all of the medical criteria in paragraph A.

AR 15-1(4), 80 Fed. Reg. at 57420, 2015 WL 5564523.

In the instant case, the ALJ's written decision explicitly addressed Listing 1.04. (Tr. 29). With regard to that listing specifically, the ALJ provided:

> The claimant's degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication. Imaging of the spine shows some pushing of the nerve root but not nerve root compression and the claimant exhibits normal gait and has required only conservative treatment (Exhibit 15F).

---

[4] "When [the SSA] determine[s] that a United States Court of Appeals holding conflicts with [the SSA's] interpretation of a provision of the Social Security Act or regulations and the Government does not seek further judicial review or is unsuccessful on further review, [the SSA] will issue a Social Security Acquiescence Ruling." 20 C.F.R. § 404.985.

*Id.*

This Court concludes that the ALJ's analysis as to Listing 1.04 is inadequate. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Fox v. Colvin*, 632 Fed. App'x 750, 754 (4th Cir. 2015) (quoting *Radford*, 734 F.3d at 295). Here, the ALJ's single sentence explanation of why Plaintiff did not meet Listing 1.04A fails to meaningfully discuss the evidence the ALJ found credible or apply evidence of record to the Listing requirements. Instead, the ALJ posited the general finding that Plaintiff's impairments did not meet the listing based on Plaintiff's spinal imaging. Moreover, the ALJ merely incorporated the criteria of Listing 1.04A. The ALJ's assertion of the *absence* of evidence in lieu of an explanation of the basis for his determination precludes the Court from conducting meaningful review of the written decision. *Hambleton v. Comm'r Soc. Sec.*, SAG-15-2897, 2016 WL 4921422, at * 2 (D. Md. Sep. 15, 2016); *see also Letitia L. v. Comm'r Soc. Sec.*, Civ. No. DLB-18-3982, 2019 WL 7370355, at *3 (D. Md. Dec. 31, 2019) (quoting *Fox*, 632 Fed. App'x at 755 (declining to "review the record and cure the ALJ's deficiencies," because "it is not [the court's] role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record"). Accordingly, remand is warranted. *Radford*, 734 F.3d at 294–96; *see also Monroe v. Colvin*, 826 F.3d 176, 189–91 (4th Cir. 2016); *Letitia L.*, 2019 WL 7370355, at *4 ("*Fox* and its progeny preclude a 'harmless error' analysis by prohibiting a *de novo* review of the record to see whether evidence supporting a listing is contained therein.").

Additionally, while Defendant offers some medical evidence in support of the argument that Listing 1.04A is not met, (ECF No. 17-1 at 7), it is not the province of this Court to cobble together a meaningful explanation for a determination that a Listing has not been satisfied. *Radford*, 734 F.3d at 296. The ALJ should, on remand, expand the Listing analysis to cite specific medical evidence pertaining to each Listing the ALJ deems relevant. In particular, where there is evidence that could be used to support one of the relevant Listing criteria, the ALJ should explain the ALJ's evaluation of that evidence in connection with the ALJ's stated conclusions.

## II.    RFC Determination

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence. (ECF No. 14-2 at 23). Plaintiff offers a variety of reasons in support, including that: (1) "[d]espite the high evidentiary value afforded to Dr. Montemayor's opinion [following a consultative examination,] the ALJ failed to include any 'visual limitations relating to decreased visual acuity' in the RFC," *id.* at 26; (2) violative of *Mascio*, 780 F.3d 632, "the ALJ failed to include a relevant limitation to account for Plaintiff's moderately impaired capacity to maintain concentration, persistence or pace throughout an eight-hour workday," *id.* at 28; (3) "the ALJ was not entitled to simply rely on his own opinion of the medical evidence to determine the effects of Plaintiff's condition on her ability to work," *id.* at 31; (4) "the ALJ . . . erred by repeatedly citing to Plaintiff's 'conservative' mental health treatment as a basis to discredit the expert opinion evidence of record," *id.* at 32; and (5) "the ALJ erred by merely summarizing Plaintiff's daily activities and then relying on that summation as evidence on non-disability." *Id.*

Defendant responds to each of Plaintiff's points, arguing that: (1) "the ALJ gave Dr. Montemayor's opinion great weight, but properly adopted only those conclusions and limitations that were supported by the evidence of record as a whole," (ECF No. 17-1 at 11); (2) "the ALJ explained the evidentiary bases for finding that [P]laintiff had moderate limitations in concentration, persistence, or pace," *id.* at 12, and "ultimately found that [P]laintiff had . . . associated, vocationally relevant mental functional limitations" included in the RFC. *Id.* at 14. Accordingly, Defendant submits that "the ALJ's decision explicitly discussed the relevant evidence and provides a substantial basis for the findings." *Id.*

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 637–38. At step three of the sequential evaluation, the SSA determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2018). Listings 12.00 et seq. pertain to mental impairments. *Id.* at § 12.00 (2018). The relevant listings therein consist of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). A claimant's impairments meet the listings relevant by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A).

Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." *Id.* § 12.00(E)(3).

The SSA employs a "special technique" to rate a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(b), (c)(2), 416.920a(b), (c)(2). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, and extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c) (2018).

Remand was appropriate in *Mascio* where the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace" in the function-by-function analysis, and "said nothing about [the claimant's] mental limitations" in the hypothetical posed to the vocational expert. 780 F.3d at 633; 637–38. *Mascio* aligned the Fourth Circuit with other Courts of Appeals in concluding that an ALJ does not "account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine or unskilled work,'" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* at 638 (citing *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Yet, despite the foregoing, an "ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a

limitation" in the claimant's RFC. *Id.* "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.*

Here, with regard to Plaintiff's moderate limitations in concentration, persistence and pace, the ALJ provided:

> The undersigned has also considered the Federal Appeals Court's ruling in <u>Mascio v. Colvin</u>, [780 F.3d 632] (4th Cir. 2015) with regards to a finding of moderate limitations in [c]oncentration, [p]ersistence and [p]ace and its potential impact on the ability to remain on task. The evidence shows that the claimant could watch television. She could drive and perform her own personal care (Hearing testimony). In light of this as well as evidence discussed elsewhere in this decision, the undersigned believes that the claimant does not have a significant deficit in the areas of persistence or pace that is not accommodated by the limitation to no work at a production rate pace and limitations on changes in routine with the addition of new or more complex tasks. Therefore, the [RFC] assessment described above does not include further limitations.

(Tr. 36).

The Court agrees with Plaintiff's argument concerning the ALJ's treatment of Plaintiff's moderate limitations in concentration, persistence, and pace. At the outset, the ALJ's explanation only reflects that Plaintiff does not have "significant deficit in the areas of persistence or pace that is not accommodated" by limitations in the RFC. (Tr. 36). However, the analysis is silent on whether or not Plaintiff's moderate limitation in *concentration* is likewise accommodated. Even if the ALJ had considered the concentration limitation, which is not clear, the Court finds that there exists a gap between the ALJ's listing of evidence—namely, Plaintiff's daily activities—and conclusion that limitations concerning the production rate pace and changes in routine or complex tasks are satisfactorily explained to be considered supported by substantial evidence. And, this portion of the ALJ's decision is troubling in that it only mentions the *type* of activities Plaintiff can perform, but fails to mention the *extent* to which Plaintiff can engage in same. Such an analysis is impermissible and requires remand. *Woods v. Berryhill*, 888 F.3d 686, 694–95 (4th Cir. 2018) (citing *Brown v. Comm'r. Soc. Sec.*, 873 F.3d 251, 263 (4th Cir. 2017) (emphasis in *Woods*) ("An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them."). Finally, the ALJ's decision on this point relies exclusively on evidence of Plaintiff's daily activities; it lacks any mention of medical evidence. On remand, the ALJ should consider and explain how the medical evidence of record affects the RFC determination in the context of Plaintiff's moderate limitations in concentration, persistence, and pace. *See Mascio*, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted) ("[T]he residual functioning capacity assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations.").

In sum, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ

"must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694 (alteration in original) (quoting *Monroe*, 826 F.3d at 189). The ALJ's failure to connect the evidence to his conclusion by logical explanation constitutes reversible error. *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Therefore, because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the Court will remand this case for further proceedings. *Thomas*, 916 F.3d at 311 (citing *Woods*, 888 F.3d at 694).

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 14), is DENIED and Defendant's Motion for Summary Judgment (ECF No. 17) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge